# UNITED STATES DISTRICT COURT
## District of Columbia

FILED

DEC 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JAMES H. PICKETT, JR. (Class Action)
5302 Broadwater Court
Temple Hills, Maryland 20748,
(30l) 466-8993
    **PLAINTIFFS**

    **VS**

JOHN E. POTTER,
Postmaster General, U. S. Postal Service
475 L' ENFANT PLAZA, S. W.
WASHINGTON, D. C. 20260
    **DEFENDANT**

Case: 1:07-cv-02248
Assigned To : Friedman, Paul L.
Assign. Date : 12/14/2007
Description: Employ. Discrim.

JURY ACTION

## COMPLAINT

Comes now the Plaintiffs, James H. Pickett, Jr. and the"impacted 'Joesph Curseen, Jr. and Thomas Morris, Jr., Processing And Distribution Mail Facility', Employees, and states as follows:

1. The above referenced "Mail Facility", located at 900 Brentwood Road, N. E., Washington, D. C· 20066-9998, was contaminated with a deadly ANTHRAX powder, **on or about October, 2001.**

2. The above referenced "Mail Facility" was closed causing all of its employees that· survived and was healthy enough, to be placed in several other U. S. Postal Service "Mail Facilities", some near, some far.

3. The United States Congress and Government, allocated at least Five Hundred Million U. S. Dollars ($500,000,000.) to cover the decontamination and other impacted parties that would be affected . According to the Honorable Eleanor Holmes Norton, that should have included the cost of leased / contracted buses that helped transport some of the relocated employees . Please let the record show that the buses were discontinued on the "Reverned Dr. Martin Luther King" Holiday 2002. According to the U. S. Postal Service, Management because it cost too much...I / We now file this civil action because in Trenton, N. J., the employees that had to travel long distances were compensated for their "Travel Time", etc.. I, along with numerous other co-workers asked that we be compensated after the buses

*1*

were discontinued...and no compensation for "Travel Time" was given to me or my co-workers.

4.  On December 15, 2006, the"Trenton, NewJersey Mail Facility" employees were paid for their Travel Time (Please see attched copy of three page email from APWU Local President William Lewis).

I now file this action under the "CIVIL RIGHTS ACT OF 1991", because I and the other above referenced co-warkers was discriminated against by not being afforded Equal Employment Opportunity and or pay as was done for the United States Postal Service's Trenton, New Jersey Employees. I / We are requesting a jury Trial and are seeking $ 50,000,000. (fifty million) U. S. Dollars, attorneys fee, Court cost.

Plaintiffsfurther cites the entire "Civil Rights Act Of 1991" as a further arguement and/or cases referenced within. (Please note attatched copy of the "Civil Rights Act Of 1991".)

The Plaintiff hereby affirms that all the infomation is true to the best of my knowledge.

Respectfully Submitted,

James H. Pickett, Jr. - Pro Se

5302 Broadwater Court

Temple Hills, Maryland  20748

(301) 466-8993

(301) 505- 5892

I _Lena V Hunter_ , a retired Plaintiff in the
"Travel Pay" Civil Suit, endured a hardship because of the long distance to work,
and the many daily hours it took to get back and forth to work at the " Suburban Mail
Facility" in Gaithersburg, Maryland.

Sincerely,

Signature : _Lena V Hunter_

Date: _12-13-07_

_202 882-1990_

From:
Bill Lewis
President
Local 1020

An agreement has been reached in the Anthrax Travel Grievance. On Wednesday, November 22, 2006 the parties finalized an agreement. This agreement is only for the employees of the Trenton P&DC who were displaced when the Trenton P&DC was closed due to Anthrax. This settlement is compensation for time traveled to temporary duty assignments outside the local commuting area.

The agreement provides for the members of the Trenton Local to be compensated 5,300,000.00 dollars. Payment will be in the December 15, 2006 paycheck.

Happy Holidays from the Trenton Local.

Before I get into specifics of the settlement I have a large list of Thank You's. First, I would like to thank the membership of TMAL, the local executive board and stewards for being so supportive of me during the last 5 years, my very good friend, NBA Jeff Kehlert who deserves so much praise and gratitude from our local.

We must thank our legal team, Melinda Holmes, Esquire- APWU National Attorney and Mark Belland, Esquire our Local Attorney. Mark was the driving force behind us securing a final agreement in this matter.

I would like to thank the National President's Conference for allowing us to present our story and the support generated from the presidents was invaluable. I must not forget the Postal news sites, Postal Employees Network, Postal Reporter, Postal Mag and 21 century postal workers. These sites helped keep our mission alive and allowed the whole postal community to see what was happening in Trenton.

There were many lawsuits and grievances filed. All grievances and court actions are resolved by this global settlement. The following should help clarify the settlement and the allocations of the settlement funds.

Employees of the Trenton P & DC reassigned to the following work locations:

Edison Toms River

South River Lakewood

New Brunswick Monmouth

shall be compensated for travel time spent to those locations.

EDISON/SOUTH RIVER/MONMOUTH/NEW BRUNSWICK/TOMS RIVER:

Payment for time spent traveling for the period shall be in excess of twenty (20) calendar days. Compensation shall be determined as follows:

07 2248

**FILED**

DEC 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Payment shall be based upon a prorated number of days worked (and traveling) calculated in ten (10) day increments.

The following are examples:

John Doe worked 215 days,

he falls in the 211-220 bracket and he shall receive $ 8,775.00

Mary Doe worked 241 days,

She falls in the 241-250 bracket and shall receive $ 10,125.00

This period encompasses a total of 27 pay periods from PP 23/2001 through PP 23/2002.

EDISON:

This portion of the settlement is for employees assigned to the Kilmer P&DC after the opening of the Interim Trenton Facility / Monroe IMF. This period encompasses a total of 61 pay periods from PP 25/2002 through PP 6/2005.

$100.00 per each week in a pay status.

LAKEWOOD:

This portion of the settlement is for employees assigned to the Lakewood and or Kilmer VMF when the Trenton VMF was closed for the decontamination of the Trenton P&DC.

Payment shall be based upon a prorated number of days worked (and traveling) calculated in ten (10)-day increments for pay periods PP 10/2003 through PP 10/2004. This period encompasses a total of 26 pay periods.

For the period of PP 11/2004 through PP 24/2004 employees shall be compensated at $100.00 per each week in a pay status.

MONROE:

Employees of the Trenton P&DC reassigned to the Monroe work location â€" on the rolls of the Trenton P&DC as of October 18, 2001- shall each be paid an equal lump sum payment of fifteen hundred dollars $1,500.00.

The parties began negotiations back in July 2006 and had many discussions and arguments. During this period I uncovered 60 members missing from the list of employees the USPS presented, missing were CFS, BMEU, Office personnel and customer service employees assigned to the P&DC. How I found these missing members was to cross check the dues check off. I have convinced the USPS that some employees may still be missing and they have agreed to compensate the employee in the same

method as the other members. This said employee bears the responsibility to produce the evidence that they traveled to the above referenced locations.

I never forgot our former members or members who are now deceased. Checks are being issued to these individuals or their families. Checks will be sent to their last known address. If you are getting email, please reach out to me and advise me of any changes. If you do not get the check please advise me ASAP. You only have 4 months to make a claim for your portion. I will personally follow up with deceased member's families.

The full text of the settlement is on the Local's Web Page

Please make a generous donation to COPA, make your local #1.

Happy Holidays,

Bill Lewis
President

PUBLIC LAW 102–166 [S. 1745];  November 21, 1991

## CIVIL RIGHTS ACT OF 1991

*For Legislative History of Act, see p. 549.*

**An Act to amend the Civil Rights Act of 1964 to strengthen and improve Federal civil rights laws, to provide for damages in cases of intentional employment discrimination, to clarify provisions regarding disparate impact actions, and for other purposes.**

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Civil Rights Act of 1991".

Civil Rights Act of 1991.
42 USC 1981 note.

**SEC. 2. FINDINGS.**

The Congress finds that—

(1) additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace;

(2) the decision of the Supreme Court in Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989) has weakened the scope and effectiveness of Federal civil rights protections; and

(3) legislation is necessary to provide additional protections against unlawful discrimination in employment.

42 USC 1981 note.

**SEC. 3. PURPOSES.**

The purposes of this Act are—

(1) to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace;

(2) to codify the concepts of "business necessity" and "job related" enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), and in the other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989);

(3) to confirm statutory authority and provide statutory guidelines for the adjudication of disparate impact suits under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); and

(4) to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.

42 USC 1981 note.

# TITLE I—FEDERAL CIVIL RIGHTS REMEDIES

**SEC. 101. PROHIBITION AGAINST ALL RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS.**

Section 1977 of the Revised Statutes (42 U.S.C. 1981) is amended—

(1) by inserting "(a)" before "All persons within"; and

(2) by adding at the end the following new subsections:

"(b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.".

### SEC. 102. DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION.

The Revised Statutes are amended by inserting after section 1977 (42 U.S.C. 1981) the following new section:

42 USC 1981a.

### "SEC. 1977A. DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION IN EMPLOYMENT.

"(a) RIGHT OF RECOVERY.—

"(1) CIVIL RIGHTS.—In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

"(2) DISABILITY.—In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and the regulations implementing section 501, or who violated the requirements of section 501 of the Act or the regulations implementing section 501 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

"(3) REASONABLE ACCOMMODATION AND GOOD FAITH EFFORT.— In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 or regulations implementing section 501 of the Rehabilitation Act of 1973, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual

with an equa
undue hardsh

"(b) COMPENSAT

"(1) DETER
party may re
a respondent
political sub
that the res
discriminator
ence to the fe

"(2) EXCLU
satory dama
backpay, int
thorized und

"(3) LIMIT
damages awa
emotional pa
of enjoyment
amount of p
not exceed, fo

"(A) i
and few
endar w
$50,000;

"(B) i
and few
endar w
$100,000

"(C) i
and few
endar w
$200,000

"(D) i
employe
current

"(4) CONS
strued to lin
1977 of the F

"(c) JURY TRI
unitive damage

"(1) any p
"(2) the c
described in

"(d) DEFINITIO:
"(1) COM
means—

"(A) i
under s
Commis
bring a
Rights /

"(B) i
under s
Commis
an actio
habilita
who ma

with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

"(b) COMPENSATORY AND PUNITIVE DAMAGES.—

"(1) DETERMINATION OF PUNITIVE DAMAGES.—A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

"(2) EXCLUSIONS FROM COMPENSATORY DAMAGES.—Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964.

"(3) LIMITATIONS.—The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

"(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

"(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

"(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

"(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

"(4) CONSTRUCTION.—Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes (42 U.S.C. 1981).

"(c) JURY TRIAL.—If a complaining party seeks compensatory or punitive damages under this section—

"(1) any party may demand a trial by jury; and

"(2) the court shall not inform the jury of the limitations described in subsection (b)(3).

"(d) DEFINITIONS.—As used in this section:

"(1) COMPLAINING PARTY.—The term 'complaining party' means—

"(A) in the case of a person seeking to bring an action under subsection (a)(1), the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); or

"(B) in the case of a person seeking to bring an action under subsection (a)(2), the Equal Employment Opportunity Commission, the Attorney General, a person who may bring an action or proceeding under section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), or a person who may bring an action or proceeding under title I of the

Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.).

"(2) DISCRIMINATORY PRACTICE.—The term 'discriminatory practice' means the discrimination described in paragraph (1), or the discrimination or the violation described in paragraph (2), of subsection (a).

### SEC. 103. ATTORNEY'S FEES.

The last sentence of section 722 of the Revised Statutes (42 U.S.C. 1988) is amended by inserting ", 1977A" after "1977".

### SEC. 104. DEFINITIONS.

Section 701 of the Civil Rights Act of 1964 (42 U.S.C. 2000e) is amended by adding at the end the following new subsections:

"(l) The term 'complaining party' means the Commission, the Attorney General, or a person who may bring an action or proceeding under this title.

"(m) The term 'demonstrates' means meets the burdens of production and persuasion.

"(n) The term 'respondent' means an employer, employment agency, labor organization, joint labor-management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 717.".

### SEC. 105. BURDEN OF PROOF IN DISPARATE IMPACT CASES.

(a) Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2) is amended by adding at the end the following new subsection:

"(k)(1)(A) An unlawful employment practice based on disparate impact is established under this title only if—

"(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

"(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

"(B)(i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

"(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

"(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of 'alternative employment practice'.

"(2) A demonstratio
business necessity ma
intentional discrimina

"(3) Notwithstandi
barring the employm
ingly uses or possesse
ules I and II of sectic
U.S.C. 802(6)), other th
the supervision of a l
use or possession aut
any other provision o
employment practice
applied with an inte
gion, sex, or national

(b) No statements
appearing at Vol. 13
25, 1991) shall be con
any way as legislativ
sion of this Act tha
cumulation/alternati

### SEC. 106. PROHIBITION

Section 703 of the
amended by section
the following new sul

"(l) It shall be an u
in connection with t
didates for employm
different cutoff score
ment related tests
national origin.".

### SEC. 107. CLARIFYING
ERATION (
ORIGIN IN

(a) IN GENERAL.—
U.S.C. 2000e-2) (as
amended by adding a

"(m) Except as o
employment practic
demonstrates that r
motivating factor fo
factors also motivate

(b) ENFORCEMENT
U.S.C. 2000e-5(g)) is

(1) by designa
graph (1);

(2) by designa
indenting accor

(3) by adding

"(B) On a claim i
section 703(m) and a
would have taken t
sible motivating fact

"(i) may gran
provided in cla

"(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this title.

"(3) Notwithstanding any other provision of this title, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances Act or any other provision of Federal law, shall be considered an unlawful employment practice under this title only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.".

(b) No statements other than the interpretive memorandum appearing at Vol. 137 Congressional Record S 15276 (daily ed. Oct. 25, 1991) shall be considered legislative history of, or relied upon in any way as legislative history in construing or applying, any provision of this Act that relates to Wards Cove—Business necessity/cumulation/alternative business practice.

<span style="float:right">42 USC 1981 note.</span>

## SEC. 106. PROHIBITION AGAINST DISCRIMINATORY USE OF TEST SCORES.

Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–2) (as amended by section 105) is further amended by adding at the end the following new subsection:

"(l) It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.".

## SEC. 107. CLARIFYING PROHIBITION AGAINST IMPERMISSIBLE CONSIDERATION OF RACE, COLOR, RELIGION, SEX, OR NATIONAL ORIGIN IN EMPLOYMENT PRACTICES.

(a) IN GENERAL.—Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–2) (as amended by sections 105 and 106) is further amended by adding at the end the following new subsection:

"(m) Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.".

(b) ENFORCEMENT PROVISIONS.—Section 706(g) of such Act (42 U.S.C. 2000e–5(g)) is amended—

(1) by designating the first through third sentences as paragraph (1);

(2) by designating the fourth sentence as paragraph (2)(A) and indenting accordingly; and

(3) by adding at the end the following new subparagraph:

"(B) On a claim in which an individual proves a violation under section 703(m) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

"(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs dem-

onstrated to be directly attributable only to the pursuit of a claim under section 703(m); and

"(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).".

**SEC. 108. FACILITATING PROMPT AND ORDERLY RESOLUTION OF CHALLENGES TO EMPLOYMENT PRACTICES IMPLEMENTING LITIGATED OR CONSENT JUDGMENTS OR ORDERS.**

Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–2) (as amended by sections 105, 106, and 107 of this title) is further amended by adding at the end the following new subsection:

"(n)(1)(A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

"(B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

"(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

"(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

"(II) a reasonable opportunity to present objections to such judgment or order; or

"(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

"(2) Nothing in this subsection shall be construed to—

"(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

"(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

"(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

"(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

"(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsec-

tion shall preclu
of title 28, Unite

**SEC. 109. PROTEC**

(a) DEFINITION
Act of 1964 (42
with Disabilities
by adding at the
a foreign countr
of the United St

(b) EXEMPTION
(1) CIVIL
Act of 1964
(A) by
(B) by

"(b) It shall
employer (or a
organization, e
committee contr
(including on-th
wise prohibited
workplace in a
would cause suc
such agency, or
country in whic

"(c)(1) If an er
poration is a for
or 704 engaged
engaged in by su

"(2) Sections
foreign operatic
controlled by an

"(3) For purpo
an employer con
"(A) the i
"(B) the c
"(C) the c
"(D) the c
of the employer
(2) AMERI
the Americ
amended—
(A) b
(B) b
subsect
"(c) COVERED
"(1) IN GE
for a covere
nation und
workplace i
would cause
country in
"(2) CONT
"(A)
tion wh
practic

tion shall preclude a transfer of such action pursuant to section 1404 of title 28, United States Code.".

## SEC. 109. PROTECTION OF EXTRATERRITORIAL EMPLOYMENT.

(a) DEFINITION OF EMPLOYEE.—Section 701(f) of the Civil Rights Act of 1964 (42 U.S.C. 2000e(f)) and section 101(4) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111(4)) are each amended by adding at the end the following: "With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.".

(b) EXEMPTION.—

(1) CIVIL RIGHTS ACT OF 1964.—Section 702 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-1) is amended—

(A) by inserting "(a)" after "SEC. 702."; and

(B) by adding at the end the following:

"(b) It shall not be unlawful under section 703 or 704 for an employer (or a corporation controlled by an employer), labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining (including on-the-job training programs) to take any action otherwise prohibited by such section, with respect to an employee in a workplace in a foreign country if compliance with such section would cause such employer (or such corporation), such organization, such agency, or such committee to violate the law of the foreign country in which such workplace is located.

"(c)(1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 703 or 704 engaged in by such corporation shall be presumed to be engaged in by such employer.

"(2) Sections 703 and 704 shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

"(3) For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on—

"(A) the interrelation of operations;

"(B) the common management;

"(C) the centralized control of labor relations; and

"(D) the common ownership or financial control,

of the employer and the corporation.".

(2) AMERICANS WITH DISABILITIES ACT OF 1990.—Section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112) is amended—

(A) by redesignating subsection (c) as subsection (d); and

(B) by inserting after subsection (b) the following new subsection:

"(c) COVERED ENTITIES IN FOREIGN COUNTRIES.—

"(1) IN GENERAL.—It shall not be unlawful under this section for a covered entity to take any action that constitutes discrimination under this section with respect to an employee in a workplace in a foreign country if compliance with this section would cause such covered entity to violate the law of the foreign country in which such workplace is located.

"(2) CONTROL OF CORPORATION.—

"(A) PRESUMPTION.—If an employer controls a corporation whose place of incorporation is a foreign country, any practice that constitutes discrimination under this section

LAWS OF 102nd CONG.—1st SESS.        Nov. 21

and is engaged in by such corporation shall be presumed to be engaged in by such employer.

"(B) EXCEPTION.—This section shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

"(C) DETERMINATION.—For purposes of this paragraph, the determination of whether an employer controls a corporation shall be based on—

"(i) the interrelation of operations;
"(ii) the common management;
"(iii) the centralized control of labor relations; and
"(iv) the common ownership or financial control,
of the employer and the corporation.".

42 USC 2000e note.

(c) APPLICATION OF AMENDMENTS.—The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act.

SEC. 110. TECHNICAL ASSISTANCE TRAINING INSTITUTE.

(a) TECHNICAL ASSISTANCE.—Section 705 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–4) is amended by adding at the end the following new subsection:

Establishment.

"(j)(1) The Commission shall establish a Technical Assistance Training Institute, through which the Commission shall provide technical assistance and training regarding the laws and regulations enforced by the Commission.

"(2) An employer or other entity covered under this title shall not be excused from compliance with the requirements of this title because of any failure to receive technical assistance under this subsection.

Appropriation authorization.
42 USC 2000e–4 note.

"(3) There are authorized to be appropriated to carry out this subsection such sums as may be necessary for fiscal year 1992.".

(b) EFFECTIVE DATE.—The amendment made by this section shall take effect on the date of the enactment of this Act.

SEC. 111. EDUCATION AND OUTREACH.

Section 705(h) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–4(h)) is amended—

(1) by inserting "(1)" after "(h)"; and
(2) by adding at the end the following new paragraph:

"(2) In exercising its powers under this title, the Commission shall carry out educational and outreach activities (including dissemination of information in languages other than English) targeted to—

"(A) individuals who historically have been victims of employment discrimination and have not been equitably served by the Commission; and

"(B) individuals on whose behalf the Commission has authority to enforce any other law prohibiting employment discrimination,
concerning rights and obligations under this title or such law, as the case may be.".

SEC. 112. EXPANSION OF RIGHT TO CHALLENGE DISCRIMINATORY SENIORITY SYSTEMS.

Section 706(e) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(e)) is amended—

(1) by inserting "(1)" before "A charge under this section"; and

---

(2) by addin

"(2) For purpose occurs, with respe an intentionally (whether or not th of the seniority when an individu a person aggrieve system or provisio

SEC. 113. AUTHORI:

(a) REVISED ST amended—

(1) by desig tions (a) and
(2) by addin

"(c) In awardir action or proceed of the Revised S expert fees as par

(b) CIVIL RIGHT Act of 1964 (42 U ing expert fees)"

SEC. 114. PROVIDII
        LIMITA'
        MENT.

Section 717 of t amended—

(1) in subse "90 days"; an
(2) in subse same interes available as i

SEC. 115. NOTICE C
        TION IN

Section 7(e) of t (29 U.S.C. 626(e))

(1) by strik
(2) by stril
(3) by strik
(4) by addir

"If a charge filed or the proceeding the Commission, A civil action ma in section 11(a) a 90 days after the

SEC. 116. LAWFUL
        AND CC

Nothing in the to affect court-or agreements, that

---

105 STAT. 1078

(2) by adding at the end the following new paragraph:

"(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this title (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.".

### SEC. 113. AUTHORIZING AWARD OF EXPERT FEES.

(a) REVISED STATUTES.—Section 722 of the Revised Statutes is amended—     42 USC 1988.

(1) by designating the first and second sentences as subsections (a) and (b), respectively, and indenting accordingly; and

(2) by adding at the end the following new subsection:

"(c) In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1977 or 1977A of the Revised Statutes, the court, in its discretion, may include expert fees as part of the attorney's fee.".

(b) CIVIL RIGHTS ACT OF 1964.—Section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)) is amended by inserting "(including expert fees)" after "attorney's fee".

### SEC. 114. PROVIDING FOR INTEREST AND EXTENDING THE STATUTE OF LIMITATIONS IN ACTIONS AGAINST THE FEDERAL GOVERNMENT.

Section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16) is amended—

(1) in subsection (c), by striking "thirty days" and inserting "90 days"; and

(2) in subsection (d), by inserting before the period ", and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.".

### SEC. 115. NOTICE OF LIMITATIONS PERIOD UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967.

Section 7(e) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 626(e)) is amended—

(1) by striking paragraph (2);

(2) by striking the paragraph designation in paragraph (1);

(3) by striking "Sections 6 and" and inserting "Section"; and

(4) by adding at the end the following:

"If a charge filed with the Commission under this Act is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 11(a) against the respondent named in the charge within 90 days after the date of the receipt of such notice.".

### SEC. 116. LAWFUL COURT-ORDERED REMEDIES, AFFIRMATIVE ACTION, AND CONCILIATION AGREEMENTS NOT AFFECTED.     42 USC 1981 note.

Nothing in the amendments made by this title shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law.

**P.L. 102–166**
**Sec. 117**

**Government employees.**

**2 USC 60l.**

### SEC. 117. COVERAGE OF HOUSE OF REPRESENTATIVES AND THE AGENCIES OF THE LEGISLATIVE BRANCH.

(a) COVERAGE OF THE HOUSE OF REPRESENTATIVES.—

(1) IN GENERAL.—Notwithstanding any provision of title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) or of other law, the purposes of such title shall, subject to paragraph (2), apply in their entirety to the House of Representatives.

(2) EMPLOYMENT IN THE HOUSE.—

(A) APPLICATION.—The rights and protections under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) shall, subject to subparagraph (B), apply with respect to any employee in an employment position in the House of Representatives and any employing authority of the House of Representatives.

(B) ADMINISTRATION.—

(i) IN GENERAL.—In the administration of this paragraph, the remedies and procedures made applicable pursuant to the resolution described in clause (ii) shall apply exclusively.

(ii) RESOLUTION.—The resolution referred to in clause (i) is the Fair Employment Practices Resolution (House Resolution 558 of the One Hundredth Congress, as agreed to October 4, 1988), as incorporated into the Rules of the House of Representatives of the One Hundred Second Congress as Rule LI, or any other provision that continues in effect the provisions of such resolution.

(C) EXERCISE OF RULEMAKING POWER.—The provisions of subparagraph (B) are enacted by the House of Representatives as an exercise of the rulemaking power of the House of Representatives, with full recognition of the right of the House to change its rules, in the same manner, and to the same extent as in the case of any other rule of the House.

(b) INSTRUMENTALITIES OF CONGRESS.—

(1) IN GENERAL.—The rights and protections under this title and title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) shall, subject to paragraph (2), apply with respect to the conduct of each instrumentality of the Congress.

(2) ESTABLISHMENT OF REMEDIES AND PROCEDURES BY INSTRUMENTALITIES.—The chief official of each instrumentality of the Congress shall establish remedies and procedures to be utilized with respect to the rights and protections provided pursuant to paragraph (1). Such remedies and procedures shall apply exclusively, except for the employees who are defined as Senate employees, in section 301(c)(1).

(3) REPORT TO CONGRESS.—The chief official of each instrumentality of the Congress shall, after establishing remedies and procedures for purposes of paragraph (2), submit to the Congress a report describing the remedies and procedures.

(4) DEFINITION OF INSTRUMENTALITIES.—For purposes of this section, instrumentalities of the Congress include the following: the Architect of the Capitol, the Congressional Budget Office, the General Accounting Office, the Government Printing Office, the Office of Technology Assessment, and the United States Botanic Garden.

Nov. 21

(5) CONSTI
enforcement
717 of title V
16).

SEC. 118. ALTERNA

Where approp
alternative mean
tiations, concilia
and arbitration, i
Acts or provision:

## TI'

SEC. 201. SHORT T

This title may l

SEC. 202. FINDING:

(a) FINDINGS.—

(1) despite
women and
ment and de

(2) artificia
minorities in

(3) United
women and
are increasin
work force;

(4) the "G
ment of Lal
"Report on t
in raising pu

(A) th
the man
States w

(B) th
line fund

(C) th
to crede:

(D) th
advance

(5) the es
raised by the

(A) fo:
ing arti
minorit
business

(B) pr

(6) a con
manner in
are filled, th
to foster the
compensatio
corporate se
and policies

Case 1:07-cv-02240-PLF    Document 1    Filed 12/14/2007    Page 17 of 36

CIVIL RIGHTS ACT OF 1991

(5) CONSTRUCTION.—Nothing in this section shall alter the enforcement procedures for individuals protected under section 717 of title VII for the Civil Rights Act of 1964 (42 U.S.C. 2000e–16).

## SEC. 118. ALTERNATIVE MEANS OF DISPUTE RESOLUTION.

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

42 USC 1981 note.

# TITLE II—GLASS CEILING

Glass Ceiling Act of 1991. Women. Minorities.

## SEC. 201. SHORT TITLE.

This title may be cited as the "Glass Ceiling Act of 1991".

42 USC 2000e note.

## SEC. 202. FINDINGS AND PURPOSE.

42 USC 2000e note.

(a) FINDINGS.—Congress finds that—

(1) despite a dramatically growing presence in the workplace, women and minorities remain underrepresented in management and decisionmaking positions in business;

(2) artificial barriers exist to the advancement of women and minorities in the workplace;

(3) United States corporations are increasingly relying on women and minorities to meet employment requirements and are increasingly aware of the advantages derived from a diverse work force;

(4) the "Glass Ceiling Initiative" undertaken by the Department of Labor, including the release of the report entitled "Report on the Glass Ceiling Initiative", has been instrumental in raising public awareness of—

(A) the underrepresentation of women and minorities at the management and decisionmaking levels in the United States work force;

(B) the underrepresentation of women and minorities in line functions in the United States work force;

(C) the lack of access for qualified women and minorities to credential-building developmental opportunities; and

(D) the desirability of eliminating artificial barriers to the advancement of women and minorities to such levels;

(5) the establishment of a commission to examine issues raised by the Glass Ceiling Initiative would help—

(A) focus greater attention on the importance of eliminating artificial barriers to the advancement of women and minorities to management and decisionmaking positions in business; and

(B) promote work force diversity;

(6) a comprehensive study that includes analysis of the manner in which management and decisionmaking positions are filled, the developmental and skill-enhancing practices used to foster the necessary qualifications for advancement, and the compensation programs and reward structures utilized in the corporate sector would assist in the establishment of practices and policies promoting opportunities for, and eliminating artifi-

cial barriers to, the advancement of women and minorities to management and decisionmaking positions; and

(7) a national award recognizing employers whose practices and policies promote opportunities for, and eliminate artificial barriers to, the advancement of women and minorities will foster the advancement of women and minorities into higher level positions by—

(A) helping to encourage United States companies to modify practices and policies to promote opportunities for, and eliminate artificial barriers to, the upward mobility of women and minorities; and

(B) providing specific guidance for other United States employers that wish to learn how to revise practices and policies to improve the access and employment opportunities of women and minorities.

(b) PURPOSE.—The purpose of this title is to establish—

(1) a Glass Ceiling Commission to study—

(A) the manner in which business fills management and decisionmaking positions;

(B) the developmental and skill-enhancing practices used to foster the necessary qualifications for advancement into such positions; and

(C) the compensation programs and reward structures currently utilized in the workplace; and

(2) an annual award for excellence in promoting a more diverse skilled work force at the management and decisionmaking levels in business.

42 USC 2000e
note.

**SEC. 203. ESTABLISHMENT OF GLASS CEILING COMMISSION.**

(a) IN GENERAL.—There is established a Glass Ceiling Commission (referred to in this title as the "Commission"), to conduct a study and prepare recommendations concerning—

(1) eliminating artificial barriers to the advancement of women and minorities; and

(2) increasing the opportunities and developmental experiences of women and minorities to foster advancement of women and minorities to management and decisionmaking positions in business.

(b) MEMBERSHIP.—

(1) COMPOSITION.—The Commission shall be composed of 21 members, including—

(A) six individuals appointed by the President;

(B) six individuals appointed jointly by the Speaker of the House of Representatives and the Majority Leader of the Senate;

(C) one individual appointed by the Majority Leader of the House of Representatives;

(D) one individual appointed by the Minority Leader of the House of Representatives;

(E) one individual appointed by the Majority Leader of the Senate;

(F) one individual appointed by the Minority Leader of the Senate;

(G) two Members of the House of Representatives appointed jointly by the Majority Leader and the Minority Leader of the House of Representatives;

(H) tw
Majority
and

(I) the
(2) CONSID
paragraphs (
ity shall con
whether the

(A) an
and min

(B) hol
poration
issues re

(C) pos
regardin

(3) BALANC
graphs (A) a
shall seek to
among the gr
(B), and (C) of

(c) CHAIRPERSO
Chairperson of th

(d) TERM OF OF
the Commission.

(e) VACANCIES.—
Commission shall
appointment for t
affect the power o
the Commission.

(f) MEETINGS.—

(1) MEETING
sion shall mee
pending the c
The Commissi
person or a m
the additional

(2) MEETING
shall meet on
described in
tional meetin
of the Commi

(g) QUORUM.—A
quorum for the tra

(h) COMPENSATIO

(1) COMPENS
not an employ
pensation at th
of the Executi
States Code,
performance o
at meetings ar
conduct the du

(2) TRAVEL E
receive travel
ence, at rates
chapter I of cl

(H) two Members of the Senate appointed jointly by the Majority Leader and the Minority Leader of the Senate; and

(I) the Secretary of Labor.

(2) CONSIDERATIONS.—In making appointments under subparagraphs (A) and (B) of paragraph (1), the appointing authority shall consider the background of the individuals, including whether the individuals—

(A) are members of organizations representing women and minorities, and other related interest groups;

(B) hold management or decisionmaking positions in corporations or other business entities recognized as leaders on issues relating to equal employment opportunity; and

(C) possess academic expertise or other recognized ability regarding employment issues.

(3) BALANCE.—In making the appointments under subparagraphs (A) and (B) of paragraph (1), each appointing authority shall seek to include an appropriate balance of appointees from among the groups of appointees described in subparagraphs (A), (B), and (C) of paragraph (2).

(c) CHAIRPERSON.—The Secretary of Labor shall serve as the Chairperson of the Commission.

(d) TERM OF OFFICE.—Members shall be appointed for the life of the Commission.

(e) VACANCIES.—Any vacancy occurring in the membership of the Commission shall be filled in the same manner as the original appointment for the position being vacated. The vacancy shall not affect the power of the remaining members to execute the duties of the Commission.

(f) MEETINGS.—

(1) MEETINGS PRIOR TO COMPLETION OF REPORT.—The Commission shall meet not fewer than five times in connection with and pending the completion of the report described in section 204(b). The Commission shall hold additional meetings if the Chairperson or a majority of the members of the Commission request the additional meetings in writing.

(2) MEETINGS AFTER COMPLETION OF REPORT.—The Commission shall meet once each year after the completion of the report described in section 204(b). The Commission shall hold additional meetings if the Chairperson or a majority of the members of the Commission request the additional meetings in writing.

(g) QUORUM.—A majority of the Commission shall constitute a quorum for the transaction of business.

(h) COMPENSATION AND EXPENSES.—

(1) COMPENSATION.—Each member of the Commission who is not an employee of the Federal Government shall receive compensation at the daily equivalent of the rate specified for level V of the Executive Schedule under section 5316 of title 5, United States Code, for each day the member is engaged in the performance of duties for the Commission, including attendance at meetings and conferences of the Commission, and travel to conduct the duties of the Commission.

(2) TRAVEL EXPENSES.—Each member of the Commission shall receive travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of title 5, United States Code, for each

105 STAT. 1083

day the member is engaged in the performance of duties away from the home or regular place of business of the member.

(3) EMPLOYMENT STATUS.—A member of the Commission, who is not otherwise an employee of the Federal Government, shall not be deemed to be an employee of the Federal Government except for the purposes of—

(A) the tort claims provisions of chapter 171 of title 28, United States Code; and

(B) subchapter I of chapter 81 of title 5, United States Code, relating to compensation for work injuries.

42 USC 2000e note.

**SEC. 204. RESEARCH ON ADVANCEMENT OF WOMEN AND MINORITIES TO MANAGEMENT AND DECISIONMAKING POSITIONS IN BUSINESS.**

(a) ADVANCEMENT STUDY.—The Commission shall conduct a study of opportunities for, and artificial barriers to, the advancement of women and minorities to management and decisionmaking positions in business. In conducting the study, the Commission shall—

(1) examine the preparedness of women and minorities to advance to management and decisionmaking positions in business;

(2) examine the opportunities for women and minorities to advance to management and decisionmaking positions in business;

(3) conduct basic research into the practices, policies, and manner in which management and decisionmaking positions in business are filled;

(4) conduct comparative research of businesses and industries in which women and minorities are promoted to management and decisionmaking positions, and businesses and industries in which women and minorities are not promoted to management and decisionmaking positions;

(5) compile a synthesis of available research on programs and practices that have successfully led to the advancement of women and minorities to management and decisionmaking positions in business, including training programs, rotational assignments, developmental programs, reward programs, employee benefit structures, and family leave policies; and

(6) examine any other issues and information relating to the advancement of women and minorities to management and decisionmaking positions in business.

(b) REPORT.—Not later than 15 months after the date of the enactment of this Act, the Commission shall prepare and submit to the President and the appropriate committees of Congress a written report containing—

(1) the findings and conclusions of the Commission resulting from the study conducted under subsection (a); and

(2) recommendations based on the findings and conclusions described in paragraph (1) relating to the promotion of opportunities for, and elimination of artificial barriers to, the advancement of women and minorities to management and decisionmaking positions in business, including recommendations for—

(A) policies and practices to fill vacancies at the management and decisionmaking levels;

(B) developmental practices and procedures to ensure that women and minorities have access to opportunities to

105 STAT. 1084

gain the exposure, skills, and expertise necessary to assume management and decisionmaking positions;

(C) compensation programs and reward structures utilized to reward and retain key employees; and

(D) the use of enforcement (including such enforcement techniques as litigation, complaint investigations, compliance reviews, conciliation, administrative regulations, policy guidance, technical assistance, training, and public education) of Federal equal employment opportunity laws by Federal agencies as a means of eliminating artificial barriers to the advancement of women and minorities in employment.

(c) ADDITIONAL STUDY.—The Commission may conduct such additional study of the advancement of women and minorities to management and decisionmaking positions in business as a majority of the members of the Commission determines to be necessary.

**SEC. 205. ESTABLISHMENT OF THE NATIONAL AWARD FOR DIVERSITY AND EXCELLENCE IN AMERICAN EXECUTIVE MANAGEMENT.**   42 USC 2000e note.

(a) IN GENERAL.—There is established the National Award for Diversity and Excellence in American Executive Management, which shall be evidenced by a medal bearing the inscription "Frances Perkins-Elizabeth Hanford Dole National Award for Diversity and Excellence in American Executive Management". The medal shall be of such design and materials, and bear such additional inscriptions, as the Commission may prescribe.

(b) CRITERIA FOR QUALIFICATION.—To qualify to receive an award under this section a business shall—

(1) submit a written application to the Commission, at such time, in such manner, and containing such information as the Commission may require, including at a minimum information that demonstrates that the business has made substantial effort to promote the opportunities and developmental experiences of women and minorities to foster advancement to management and decisionmaking positions within the business, including the elimination of artificial barriers to the advancement of women and minorities, and deserves special recognition as a consequence; and

(2) meet such additional requirements and specifications as the Commission determines to be appropriate.

(c) MAKING AND PRESENTATION OF AWARD.—

(1) AWARD.—After receiving recommendations from the President. Commission, the President or the designated representative of the President shall annually present the award described in subsection (a) to businesses that meet the qualifications described in subsection (b).

(2) PRESENTATION.—The President or the designated representative of the President shall present the award with such President. ceremonies as the President or the designated representative of the President may determine to be appropriate.

(3) PUBLICITY.—A business that receives an award under this section may publicize the receipt of the award and use the award in its advertising, if the business agrees to help other United States businesses improve with respect to the promotion of opportunities and developmental experiences of women and minorities to foster the advancement of women and minorities to management and decisionmaking positions.

(d) BUSINESS.—For the purposes of this section, the term "business" includes—

(1)(A) a corporation including nonprofit corporations;

(B) a partnership;

(C) a professional association;

(D) a labor organization; and

(E) a business entity similar to an entity described in subparagraphs (A) through (D);

(2) an education referral program, a training program, such as an apprenticeship or management training program or a similar program; and

(3) a joint program formed by a combination of any entities described in paragraph (1) or (2).

**42 USC 2000e note.**

### SEC. 206. POWERS OF THE COMMISSION.

(a) IN GENERAL.—The Commission is authorized to—

(1) hold such hearings and sit and act at such times;

(2) take such testimony;

(3) have such printing and binding done;

(4) enter into such contracts and other arrangements;

(5) make such expenditures; and

(6) take such other actions;

as the Commission may determine to be necessary to carry out the duties of the Commission.

(b) OATHS.—Any member of the Commission may administer oaths or affirmations to witnesses appearing before the Commission.

(c) OBTAINING INFORMATION FROM FEDERAL AGENCIES.—The Commission may secure directly from any Federal agency such information as the Commission may require to carry out its duties.

(d) VOLUNTARY SERVICE.—Notwithstanding section 1342 of title 31, United States Code, the Chairperson of the Commission may accept for the Commission voluntary services provided by a member of the Commission.

(e) GIFTS AND DONATIONS.—The Commission may accept, use, and dispose of gifts or donations of property in order to carry out the duties of the Commission.

(f) USE OF MAIL.—The Commission may use the United States mails in the same manner and under the same conditions as Federal agencies.

**42 USC 2000e note.**

### SEC. 207. CONFIDENTIALITY OF INFORMATION.

(a) INDIVIDUAL BUSINESS INFORMATION.—

(1) IN GENERAL.—Except as provided in paragraph (2), and notwithstanding section 552 of title 5, United States Code, in carrying out the duties of the Commission, including the duties described in sections 204 and 205, the Commission shall maintain the confidentiality of all information that concerns—

(A) the employment practices and procedures of individual businesses; or

(B) individual employees of the businesses.

(2) CONSENT.—The content of any information described in paragraph (1) may be disclosed with the prior written consent of the business or employee, as the case may be, with respect to which the information is maintained.

(b) AGGREGATE INFORMATION.—In carrying out the duties of the Commission, the Commission may disclose—

(1) informa
procedures of

(2) informa
ees of the bu
the employee

### SEC. 208. STAFF AN

(a) STAFF.—

(1) APPOINT
appoint and
Commission
of the Commi

(2) LIMITA
member shall
fied for level
title 5, Unite
engaged in th
Commission
pensation of
United States
tive service, a
of chapter 5
classification

(b) EXPERTS AND
sion may obtain s
and consultants
accordance with s
Commission deter
the Commission.

(c) DETAIL OF F
person of the Co
detail, without rei
the Commission to
Any detail shall
status or privilege

(d) TECHNICAL A
the Commission,
technical assistan
mines to be necess

### SEC. 209. AUTHORI

There are auth
sums as may be
The sums shall re
limitation.

### SEC. 210. TERMINA

(a) COMMISSION.
visory Committee
nate 4 years after

(b) AWARD.—Th
shall terminate 4

(1) information about the aggregate employment practices or procedures of a class or group of businesses; and

(2) information about the aggregate characteristics of employees of the businesses, and related aggregate information about the employees.

**SEC. 208. STAFF AND CONSULTANTS.**                     42 USC 2000e note.

(a) STAFF.—

(1) APPOINTMENT AND COMPENSATION.—The Commission may appoint and determine the compensation of such staff as the Commission determines to be necessary to carry out the duties of the Commission.

(2) LIMITATIONS.—The rate of compensation for each staff member shall not exceed the daily equivalent of the rate specified for level V of the Executive Schedule under section 5316 of title 5, United States Code for each day the staff member is engaged in the performance of duties for the Commission. The Commission may otherwise appoint and determine the compensation of staff without regard to the provisions of title 5, United States Code, that govern appointments in the competitive service, and the provisions of chapter 51 and subchapter III of chapter 53 of title 5, United States Code, that relate to classification and General Schedule pay rates.

(b) EXPERTS AND CONSULTANTS.—The Chairperson of the Commission may obtain such temporary and intermittent services of experts and consultants and compensate the experts and consultants in accordance with section 3109(b) of title 5, United States Code, as the Commission determines to be necessary to carry out the duties of the Commission.

(c) DETAIL OF FEDERAL EMPLOYEES.—On the request of the Chairperson of the Commission, the head of any Federal agency shall detail, without reimbursement, any of the personnel of the agency to the Commission to assist the Commission in carrying out its duties. Any detail shall not interrupt or otherwise affect the civil service status or privileges of the Federal employee.

(d) TECHNICAL ASSISTANCE.—On the request of the Chairperson of the Commission, the head of a Federal agency shall provide such technical assistance to the Commission as the Commission determines to be necessary to carry out its duties.

**SEC. 209. AUTHORIZATION OF APPROPRIATIONS.**           42 USC 2000e note.

There are authorized to be appropriated to the Commission such sums as may be necessary to carry out the provisions of this title. The sums shall remain available until expended, without fiscal year limitation.

**SEC. 210. TERMINATION.**                               42 USC 2000e note.

(a) COMMISSION.—Notwithstanding section 15 of the Federal Advisory Committee Act (5 U.S.C. App.), the Commission shall terminate 4 years after the date of the enactment of this Act.

(b) AWARD.—The authority to make awards under section 205 shall terminate 4 years after the date of the enactment of this Act.

Government
Employee Rights
Act of 1991.

# TITLE III—GOVERNMENT EMPLOYEE RIGHTS

2 USC 1201.

**SEC. 301. GOVERNMENT EMPLOYEE RIGHTS ACT OF 1991.**

(a) SHORT TITLE.—This title may be cited as the "Government Employee Rights Act of 1991".

(b) PURPOSE.—The purpose of this title is to provide procedures to protect the right of Senate and other government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability.

(c) DEFINITIONS.—For purposes of this title:

(1) SENATE EMPLOYEE.—The term "Senate employee" or "employee" means—

(A) any employee whose pay is disbursed by the Secretary of the Senate;

(B) any employee of the Architect of the Capitol who is assigned to the Senate Restaurants or to the Superintendent of the Senate Office Buildings;

(C) any applicant for a position that will last 90 days or more and that is to be occupied by an individual described in subparagraph (A) or (B); or

(D) any individual who was formerly an employee described in subparagraph (A) or (B) and whose claim of a violation arises out of the individual's Senate employment.

(2) HEAD OF EMPLOYING OFFICE.—The term "head of employing office" means the individual who has final authority to appoint, hire, discharge, and set the terms, conditions or privileges of the Senate employment of an employee.

(3) VIOLATION.—The term "violation" means a practice that violates section 302 of this title.

2 USC 1202.

**SEC. 302. DISCRIMINATORY PRACTICES PROHIBITED.**

All personnel actions affecting employees of the Senate shall be made free from any discrimination based on—

(1) race, color, religion, sex, or national origin, within the meaning of section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16);

(2) age, within the meaning of section 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a); or

(3) handicap or disability, within the meaning of section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and sections 102–104 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112–14).

2 USC 1203.

**SEC. 303. ESTABLISHMENT OF OFFICE OF SENATE FAIR EMPLOYMENT PRACTICES.**

(a) IN GENERAL.—There is established, as an office of the Senate, the Office of Senate Fair Employment Practices (referred to in this title as the "Office"), which shall—

(1) administer the processes set forth in sections 305 through 307;

(2) implement programs for the Senate to heighten awareness of employee rights in order to prevent violations from occurring.

(b) DIRECTOR.—

(1) IN GENER(referred to in pointed by the tion of the Ma Leader. The political affilia the duties of th term of servic following the C A Director ma of service. Th ommendation Minority Lead

(2) SALARY.—ommendation Minority Lead The salary of employment o time and in th within the Sen ity increases.

(3) ANNUAL budget request tions.

(4) APPOINT appointed and enactment of appointed and of the session nation of a Di vacancy occurs

(c) STAFF OF THE

(1) APPOINT compensation cers, as are n

(2) DETAILEE the Governme Committee on or nonreimbur or agency, incl General Accou

(3) CONSULTA the Director m or intermitten tions thereof, tions as a star services under Act of 1946 (2

(d) EXPENSES OF the Office shall be from the appropri fiscal year 1993, thorized to be appr as shall be necessa shall be paid out vouchers approved be required for—

(1) IN GENERAL.—The Office shall be headed by a Director (referred to in this title as the "Director") who shall be appointed by the President pro tempore, upon the recommendation of the Majority Leader in consultation with the Minority Leader. The appointment shall be made without regard to political affiliation and solely on the basis of fitness to perform the duties of the position. The Director shall be appointed for a term of service which shall expire at the end of the Congress following the Congress during which the Director is appointed. A Director may be reappointed at the termination of any term of service. The President pro tempore, upon the joint recommendation of the Majority Leader in consultation with the Minority Leader, may remove the Director at any time.

(2) SALARY.—The President pro tempore, upon the recommendation of the Majority Leader in consultation with the Minority Leader, shall establish the rate of pay for the Director. The salary of the Director may not be reduced during the employment of the Director and shall be increased at the same time and in the same manner as fixed statutory salary rates within the Senate are adjusted as a result of annual comparability increases.

(3) ANNUAL BUDGET.—The Director shall submit an annual budget request for the Office to the Committee on Appropriations.

(4) APPOINTMENT OF DIRECTOR.—The first Director shall be appointed and begin service within 90 days after the date of enactment of this Act, and thereafter the Director shall be appointed and begin service within 30 days after the beginning of the session of the Congress immediately following the termination of a Director's term of service or within 60 days after a vacancy occurs in the position.

(c) STAFF OF THE OFFICE.—

(1) APPOINTMENT.—The Director may appoint and fix the compensation of such additional staff, including hearing officers, as are necessary to carry out the purposes of this title.

(2) DETAILEES.—The Director may, with the prior consent of the Government department or agency concerned and the Committee on Rules and Administration, use on a reimbursable or nonreimbursable basis the services of any such department or agency, including the services of members or personnel of the General Accounting Office Personnel Appeals Board.

(3) CONSULTANTS.—In carrying out the functions of the Office, the Director may procure the temporary (not to exceed 1 year) or intermittent services of individual consultants, or organizations thereof, in the same manner and under the same conditions as a standing committee of the Senate may procure such services under section 202(i) of the Legislative Reorganization Act of 1946 (2 U.S.C. 72a(i)).

(d) EXPENSES OF THE OFFICE.—In fiscal year 1992, the expenses of the Office shall be paid out of the Contingent Fund of the Senate from the appropriation account Miscellaneous Items. Beginning in fiscal year 1993, and for each fiscal year thereafter, there is authorized to be appropriated for the expenses of the Office such sums as shall be necessary to carry out its functions. In all cases, expenses shall be paid out of the Contingent Fund of the Senate upon vouchers approved by the Director, except that a voucher shall not be required for—

*Appropriation authorization.*

105 STAT. 1089

(1) the disbursement of salaries of employees who are paid at an annual rate;

(2) the payment of expenses for telecommunications services provided by the Telecommunications Department, Sergeant at Arms, United States Senate;

(3) the payment of expenses for stationery supplies purchased through the Keeper of the Stationery, United States Senate;

(4) the payment of expenses for postage to the Postmaster, United States Senate; and

(5) the payment of metered charges on copying equipment provided by the Sergeant at Arms, United States Senate.

The Secretary of the Senate is authorized to advance such sums as may be necessary to defray the expenses incurred in carrying out this title. Expenses of the Office shall include authorized travel for personnel of the Office.

(e) RULES OF THE OFFICE.—The Director shall adopt rules governing the procedures of the Office, including the procedures of hearing boards, which rules shall be submitted to the President pro tempore for publication in the Congressional Record. The rules may be amended in the same manner. The Director may consult with the Chairman of the Administrative Conference of the United States on the adoption of rules.

(f) REPRESENTATION BY THE SENATE LEGAL COUNSEL.—For the purpose of representation by the Senate Legal Counsel, the Office shall be deemed a committee, within the meaning of title VII of the Ethics in Government Act of 1978 (2 U.S.C. 288, et seq.).

2 USC 1204.

**SEC. 304. SENATE PROCEDURE FOR CONSIDERATION OF ALLEGED VIOLATIONS.**

The Senate procedure for consideration of alleged violations consists of 4 steps as follows:

(1) Step I, counseling, as set forth in section 305.

(2) Step II, mediation, as set forth in section 306.

(3) Step III, formal complaint and hearing by a hearing board, as set forth in section 307.

(4) Step IV, review of a hearing board decision, as set forth in section 308 or 309.

2 USC 1205.

**SEC. 305. STEP I: COUNSELING.**

(a) IN GENERAL.—A Senate employee alleging a violation may request counseling by the Office. The Office shall provide the employee with all relevant information with respect to the rights of the employee. A request for counseling shall be made not later than 180 days after the alleged violation forming the basis of the request for counseling occurred. No request for counseling may be made until 10 days after the first Director begins service pursuant to section 303(b)(4).

(b) PERIOD OF COUNSELING.—The period for counseling shall be 30 days unless the employee and the Office agree to reduce the period. The period shall begin on the date the request for counseling is received.

(c) EMPLOYEES OF THE ARCHITECT OF THE CAPITOL AND CAPITOL POLICE.—In the case of an employee of the Architect of the Capitol or an employee who is a member of the Capitol Police, the Director may refer the employee to the Architect of the Capitol or the Capitol Police Board for resolution of the employee's complaint through the internal grievance procedures of the Architect of the Capitol or the

Capitol Police B
count against th
this title.

SEC. 306. STEP II: 

(a) IN GENER
counseling perio
with the Office.
and the employi
parties separatel
between the emp

(b) MEDIATION
beginning on the
be extended for 
The Office shall 
office when the 

SEC. 307. STEP III:

(a) FORMAL C
than 30 days aft
of the end of th
formal complain
the employee h
completed the p

(b) HEARING I
(referred to in th
officers or empl
whom shall be 
officer) shall be
section. The Dir
any candidates 
Mediation and 
of the United St
uals experience
hearing board sl

(c) DISMISSAL
subsection (d), a
be frivolous.

(d) HEARING.–
(1) in clos
(2) no lat
subsection (
up to an ac
and
(3) excep
greatest ex
and proced
United Stat

(e) DISCOVER
mitted at the di

(f) SUBPOENA.
(1) AUTH
nas, which
behalf of tl
proceeding
correspond

Case 1:07-cv-02248-PLF    Document 1    Filed 12/14/2007    Page 27 of 36

Capitol Police Board for a specific period of time, which shall not count against the time available for counseling or mediation under this title.

**SEC. 306. STEP II: MEDIATION.**                                        2 USC 1206.

(a) IN GENERAL.—Not later than 15 days after the end of the counseling period, the employee may file a request for mediation with the Office. Mediation may include the Office, the employee, and the employing office in a process involving meetings with the parties separately or jointly for the purpose of resolving the dispute between the employee and the employing office.

(b) MEDIATION PERIOD.—The mediation period shall be 30 days beginning on the date the request for mediation is received and may be extended for an additional 30 days at the discretion of the Office. The Office shall notify the employee and the head of the employing office when the mediation period has ended.

**SEC. 307. STEP III: FORMAL COMPLAINT AND HEARING.**                    2 USC 1207.

(a) FORMAL COMPLAINT AND REQUEST FOR HEARING.—Not later than 30 days after receipt by the employee of notice from the Office of the end of the mediation period, the Senate employee may file a formal complaint with the Office. No complaint may be filed unless the employee has made a timely request for counseling and has completed the procedures set forth in sections 305 and 306.

(b) HEARING BOARD.—A board of 3 independent hearing officers (referred to in this title as "hearing board"), who are not Senators or officers or employees of the Senate, chosen by the Director (one of whom shall be designated by the Director as the presiding hearing officer) shall be assigned to consider each complaint filed under this section. The Director shall appoint hearing officers after considering any candidates who are recommended to the Director by the Federal Mediation and Conciliation Service, the Administrative Conference of the United States, or organizations composed primarily of individuals experienced in adjudicating or arbitrating personnel matters. A hearing board shall act by majority vote.

(c) DISMISSAL OF FRIVOLOUS CLAIMS.—Prior to a hearing under subsection (d), a hearing board may dismiss any claim that it finds to be frivolous.

(d) HEARING.—A hearing shall be conducted—

(1) in closed session on the record by a hearing board;

(2) no later than 30 days after filing of the complaint under subsection (a), except that the Office may, for good cause, extend up to an additional 60 days the time for conducting a hearing; and

(3) except as specifically provided in this title and to the greatest extent practicable, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States Code.

(e) DISCOVERY.—Reasonable prehearing discovery may be permitted at the discretion of the hearing board.

(f) SUBPOENA.—

(1) AUTHORIZATION.—A hearing board may authorize subpoenas, which shall be issued by the presiding hearing officer on behalf of the hearing board, for the attendance of witnesses at proceedings of the hearing board and for the production of correspondence, books, papers, documents, and other records.

105 STAT. 1091

(2) OBJECTIONS.—If a witness refuses, on the basis of relevance, privilege, or other objection, to testify in response to a question or to produce records in connection with the proceedings of a hearing board, the hearing board shall rule on the objection. At the request of the witness, the employee, or employing office, or on its own initiative, the hearing board may refer the objection to the Select Committee on Ethics for a ruling.

(3) ENFORCEMENT.—The Select Committee on Ethics may make to the Senate any recommendations by report or resolution, including recommendations for criminal or civil enforcement by or on behalf of the Office, which the Select Committee on Ethics may consider appropriate with respect to—

(A) the failure or refusal of any person to appear in proceedings under this or to produce records in obedience to a subpoena or order of the hearing board; or

(B) the failure or refusal of any person to answer questions during his or her appearance as a witness in a proceeding under this section.

For purposes of section 1365 of title 28, United States Code, the Office shall be deemed to be a committee of the Senate.

(g) DECISION.—The hearing board shall issue a written decision as expeditiously as possible, but in no case more than 45 days after the conclusion of the hearing. The written decision shall be transmitted by the Office to the employee and the employing office. The decision shall state the issues raised by the complaint, describe the evidence in the record, and contain a determination as to whether a violation has occurred.

(h) REMEDIES.—If the hearing board determines that a violation has occurred, it shall order such remedies as would be appropriate if awarded under section 706 (g) and (k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5 (g) and (k)), and may also order the award of such compensatory damages as would be appropriate if awarded under section 1977 and section 1977A (a) and (b)(2) of the Revised Statutes (42 U.S.C. 1981 and 1981A (a) and (b)(2)). In the case of a determination that a violation based on age has occurred, the hearing board shall order such remedies as would be appropriate if awarded under section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)). Any order requiring the payment of money must be approved by a Senate resolution reported by the Committee on Rules and Administration. The hearing board shall have no authority to award punitive damages.

(i) PRECEDENT AND INTERPRETATIONS.—Hearing boards shall be guided by judicial decisions under statutes referred to in section 302 and subsection (h) of this section, as well as the precedents developed by the Select Committee on Ethics under section 308, and other Senate precedents.

2 USC 1208.

SEC. 308. REVIEW BY THE SELECT COMMITTEE ON ETHICS.

(a) IN GENERAL.—An employee or the head of an employing office may request that the Select Committee on Ethics (referred to in this section as the "Committee"), or such other entity as the Senate may designate, review a decision under section 307, including any decision following a remand under subsection (c), by filing a request for review with the Office not later than 10 days after the receipt of the decision of a hearing board. The Office, at the discretion of the Director, on its own initiative and for good cause, may file a request

for review by the Com
later than 5 days after t
to file a request for rev
copy of any request fo
interested parties of the

(b) REVIEW.—Review
record of the hearing b
in the Congressional
under this section.

(c) REMAND.—Within
the Committee may ren
hearing board for the
further consideration.

(d) FINAL DECISION.—

(1) HEARING BOA
under subsection (
the decision of the

(2) SELECT COMM
(A) If the C
(c), it shall tra
entry in the
transmit the
during which
request for re
may extend fo
in session dur
decision.

(B) The deci
be a final deci
as a final deci
to reverse or
within the tir
decision.

(C) The deci
be a final dec
as a final d
decides not t
under subsec
notifies the in

(3) ENTRY OF A
in the records of
purposes of judici

(e) STATEMENT OF R
subsection (c) or subs
ment of the reasons fo

SEC. 309. JUDICIAL REVI

(a) IN GENERAL.—A
sion under section 30
be required to reimbu
to the section entitled
the Senate" and a
308(d)(2)(B), may pet
Appeals for the Feder

(b) LAW APPLICABLE
shall apply to a revie

for review by the Committee of a decision of a hearing board not later than 5 days after the time for the employee or employing office to file a request for review has expired. The Office shall transmit a copy of any request for review to the Committee and notify the interested parties of the filing of the request for review.

(b) REVIEW.—Review under this section shall be based on the record of the hearing board. The Committee shall adopt and publish in the Congressional Record procedures for requests for review under this section.

(c) REMAND.—Within the time for a decision under subsection (d), the Committee may remand a decision no more than one time to the hearing board for the purpose of supplementing the record or for further consideration.

(d) FINAL DECISION.—

(1) HEARING BOARD.—If no timely request for review is filed under subsection (a), the Office shall enter as a final decision, the decision of the hearing board.

(2) SELECT COMMITTEE ON ETHICS.—

Records.

(A) If the Committee does not remand under subsection (c), it shall transmit a written final decision to the Office for entry in the records of the Office. The Committee shall transmit the decision not later than 60 calendar days during which the Senate is in session after the filing of a request for review under subsection (a). The Committee may extend for 15 calendar days during which the Senate is in session the period for transmission to the Office of a final decision.

(B) The decision of the hearing board shall be deemed to be a final decision, and entered in the records of the Office as a final decision, unless a majority of the Committee votes to reverse or remand the decision of the hearing board within the time for transmission to the Office of a final decision.

(C) The decision of the hearing board shall be deemed to be a final decision, and entered in the records of the Office as a final decision, if the Committee, in its discretion, decides not to review, pursuant to a request for review under subsection (a), a decision of the hearing board, and notifies the interested parties of such decision.

(3) ENTRY OF A FINAL DECISION.—The entry of a final decision in the records of the Office shall constitute a final decision for purposes of judicial review under section 309.

(e) STATEMENT OF REASONS.—Any decision of the Committee under subsection (c) or subsection (d)(2)(A) shall contain a written statement of the reasons for the Committee's decision.

### SEC. 309. JUDICIAL REVIEW.

2 USC 1209.

(a) IN GENERAL.—Any Senate employee aggrieved by a final decision under section 308(d), or any Member of the Senate who would be required to reimburse the appropriate Federal account pursuant to the section entitled "Payments by the President or a Member of the Senate" and a final decision entered pursuant to section 308(d)(2)(B), may petition for review by the United States Court of Appeals for the Federal Circuit.

(b) LAW APPLICABLE.—Chapter 158 of title 28, United States Code, shall apply to a review under this section except that—

(1) with respect to section 2344 of title 28, United States Code, service of the petition shall be on the Senate Legal Counsel rather than on the Attorney General;

(2) the provisions of section 2348 of title 28, United States Code, on the authority of the Attorney General, shall not apply;

(3) the petition for review shall be filed not later than 90 days after the entry in the Office of a final decision under section 308(d);

(4) the Office shall be an "agency" as that term is used in chapter 158 of title 28, United States Code; and

(5) the Office shall be the respondent in any proceeding under this section.

(c) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final decision if it is determined that the decision was—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record, or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. The record on review shall include the record before the hearing board, the decision of the hearing board, and the decision, if any, of the Select Committee on Ethics.

(d) ATTORNEY'S FEES.—If an employee is the prevailing party in a proceeding under this section, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

2 USC 1210.

### SEC. 310. RESOLUTION OF COMPLAINT.

If, after a formal complaint is filed under section 307, the employee and the head of the employing office resolve the issues involved, the employee may dismiss the complaint or the parties may enter into a written agreement, subject to the approval of the Director.

2 USC 1211.

### SEC. 311. COSTS OF ATTENDING HEARINGS.

Subject to the approval of the Director, an employee with respect to whom a hearing is held under this title may be reimbursed for actual and reasonable costs of attending proceedings under sections 307 and 308, consistent with Senate travel regulations. Senate Resolution 259, agreed to August 5, 1987 (100th Congress, 1st Session), shall apply to witnesses appearing in proceedings before a hearing board.

2 USC 1212.

### SEC. 312. PROHIBITION OF INTIMIDATION.

Any intimidation of, or reprisal against, any employee by any Member, officer, or employee of the Senate, or by the Architect of the Capitol, or anyone employed by the Architect of the Capitol, as the case may be, because of the exercise of a right under this title constitutes an unlawful employment practice, which may be remedied in the same manner under this title as is a violation.

### SEC. 313. CONFIDENTIAL

(a) COUNSELING.—A
except that the Office
head of the employing

(b) MEDIATION.—All

(c) HEARINGS.—Exc
deliberations, and de
Committee on Ethics s

(d) FINAL DECISION
decision of the Select
be made public if the
employee or if the de
which had been in fa
Ethics may decide to
the absence of a pro
hearing board may
public.

(e) RELEASE OF REC
decisions of hearing b
tee on Ethics, may b
judicial review under

### SEC. 314. EXERCISE OF

The provisions of
322, are enacted by
power of the Senate,
to change its rules, i
in the case of any c
other provision of l
ment and adjudicati
prohibited by sectic
shall be within th
Senate.

### SEC. 315. TECHNICAL

Section 509 of th
U.S.C. 12209) is ame
(1) in subsect
(A) by st
(B) by re
(2) and (3),
(C) in pa
of this par
(i) b
as red
and
(ii)
insert
(2) in subsec
who are defin
Civil Rights A

### SEC. 316. POLITICAL

(a) IN GENERAL
employee describe
(1) party afi
(2) domicile

### SEC. 313. CONFIDENTIALITY.

(a) COUNSELING.—All counseling shall be strictly confidential except that the Office and the employee may agree to notify the head of the employing office of the allegations.

(b) MEDIATION.—All mediation shall be strictly confidential.

(c) HEARINGS.—Except as provided in subsection (d), the hearings, deliberations, and decisions of the hearing board and the Select Committee on Ethics shall be confidential.

(d) FINAL DECISION OF SELECT COMMITTEE ON ETHICS.—The final decision of the Select Committee on Ethics under section 308 shall be made public if the decision is in favor of the complaining Senate employee or if the decision reverses a decision of the hearing board which had been in favor of the employee. The Select Committee on Ethics may decide to release any other decision at its discretion. In the absence of a proceeding under section 308, a decision of the hearing board that is favorable to the employee shall be made public.

(e) RELEASE OF RECORDS FOR JUDICIAL REVIEW.—The records and decisions of hearing boards, and the decisions of the Select Committee on Ethics, may be made public if required for the purpose of judicial review under section 309.

### SEC. 314. EXERCISE OF RULEMAKING POWER.

2 USC 1214.

The provisions of this title, except for sections 309, 320, 321, and 322, are enacted by the Senate as an exercise of the rulemaking power of the Senate, with full recognition of the right of the Senate to change its rules, in the same manner, and to the same extent, as in the case of any other rule of the Senate. Notwithstanding any other provision of law, except as provided in section 309, enforcement and adjudication with respect to the discriminatory practices prohibited by section 302, and arising out of Senate employment, shall be within the exclusive jurisdiction of the United States Senate.

### SEC. 315. TECHNICAL AND CONFORMING AMENDMENTS.

Section 509 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12209) is amended—

    (1) in subsection (a)—

        (A) by striking paragraphs (2) through (5);

        (B) by redesignating paragraphs (6) and (7) as paragraphs (2) and (3), respectively; and

        (C) in paragraph (3), as redesignated by subparagraph (B) of this paragraph—

            (i) by striking "(2) and (6)(A)" and inserting "(2)(A)", as redesignated by subparagraph (B) of this paragraph; and

            (ii) by striking "(3), (4), (5), (6)(B), and (6)(C)" and inserting "(2)"; and

    (2) in subsection (c)(2), by inserting ", except for the employees who are defined as Senate employees, in section 301(c)(1) of the Civil Rights Act of 1991" after "shall apply exclusively".

### SEC. 316. POLITICAL AFFILIATION AND PLACE OF RESIDENCE.

2 USC 1215.

(a) IN GENERAL.—It shall not be a violation with respect to an employee described in subsection (b) to consider the—

    (1) party affiliation;

    (2) domicile; or

(3) political compatibility with the employing office, of such an employee with respect to employment decisions.

(b) DEFINITION.—For purposes of this section, the term "employee" means—

(1) an employee on the staff of the Senate leadership;

(2) an employee on the staff of a committee or subcommittee;

(3) an employee on the staff of a Member of the Senate;

(4) an officer or employee of the Senate elected by the Senate or appointed by a Member, other than those described in paragraphs (1) through (3); or

(5) an applicant for a position that is to be occupied by an individual described in paragraphs (1) through (4).

**2 USC 1216.**   **SEC. 317. OTHER REVIEW.**

No Senate employee may commence a judicial proceeding to redress discriminatory practices prohibited under section 302 of this title, except as provided in this title.

**2 USC 1217.**   **SEC. 318. OTHER INSTRUMENTALITIES OF THE CONGRESS.**

It is the sense of the Senate that legislation should be enacted to provide the same or comparable rights and remedies as are provided under this title to employees of instrumentalities of the Congress not provided with such rights and remedies.

**2 USC 1218.**   **SEC. 319. RULE XLII OF THE STANDING RULES OF THE SENATE.**

(a) REAFFIRMATION.—The Senate reaffirms its commitment to Rule XLII of the Standing Rules of the Senate, which provides as follows:

"No Member, officer, or employee of the Senate shall, with respect to employment by the Senate or any office thereof—

"(a) fail or refuse to hire an individual;

"(b) discharge an individual; or

"(c) otherwise discriminate against an individual with respect to promotion, compensation, or terms, conditions, or privileges of employment

on the basis of such individual's race, color, religion, sex, national origin, age, or state of physical handicap.".

(b) AUTHORITY TO DISCIPLINE.—Notwithstanding any provision of this title, including any provision authorizing orders for remedies to Senate employees to redress employment discrimination, the Select Committee on Ethics shall retain full power, in accordance with its authority under Senate Resolution 338, 88th Congress, as amended, with respect to disciplinary action against a Member, officer, or employee of the Senate for a violation of Rule XLII.

**2 USC 1219.**   **SEC. 320. COVERAGE OF PRESIDENTIAL APPOINTEES.**

(a) IN GENERAL.—

(1) APPLICATION.—The rights, protections, and remedies provided pursuant to section 302 and 307(h) of this title shall apply with respect to employment of Presidential appointees.

(2) ENFORCEMENT BY ADMINISTRATIVE ACTION.—Any Presidential appointee may file a complaint alleging a violation, not later than 180 days after the occurrence of the alleged violation, with the Equal Employment Opportunity Commission, or such other entity as is designated by the President by Executive Order, which, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States

Code, shall determine whether a violation has occurred and shall set forth its determination in a final order. If the Equal Employment Opportunity Commission, or such other entity as is designated by the President pursuant to this section, determines that a violation has occurred, the final order shall also provide for appropriate relief.

(3) JUDICIAL REVIEW.—

(A) IN GENERAL.—Any party aggrieved by a final order under paragraph (2) may petition for review by the United States Court of Appeals for the Federal Circuit.

(B) LAW APPLICABLE.—Chapter 158 of title 28, United States Code, shall apply to a review under this section except that the Equal Employment Opportunity Commission or such other entity as the President may designate under paragraph (2) shall be an "agency" as that term is used in chapter 158 of title 28, United States Code.

(C) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final order under paragraph (2) if it is determined that the order was—

(i) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(ii) not made consistent with required procedures; or

(iii) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(D) ATTORNEY'S FEES.—If the presidential appointee is the prevailing party in a proceeding under this section, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

(b) PRESIDENTIAL APPOINTEE.—For purposes of this section, the term "Presidential appointee" means any officer or employee, or an applicant seeking to become an officer or employee, in any unit of the Executive Branch, including the Executive Office of the President, whether appointed by the President or by any other appointing authority in the Executive Branch, who is not already entitled to bring an action under any of the statutes referred to in section 302 but does not include any individual—

(1) whose appointment is made by and with the advice and consent of the Senate;

(2) who is appointed to an advisory committee, as defined in section 3(2) of the Federal Advisory Committee Act (5 U.S.C. App.); or

(3) who is a member of the uniformed services.

**SEC. 321. COVERAGE OF PREVIOUSLY EXEMPT STATE EMPLOYEES.**          2 USC 1220.

(a) APPLICATION.—The rights, protections, and remedies provided pursuant to section 302 and 307(h) of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof—

(1) to be a member of the elected official's personal staff;

(2) to serve the elected official on the policymaking level;
(3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

(b) ENFORCEMENT BY ADMINISTRATIVE ACTION.—

(1) IN GENERAL.—Any individual referred to in subsection (a) may file a complaint alleging a violation, not later than 180 days after the occurrence of the alleged violation, with the Equal Employment Opportunity Commission, which, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States Code, shall determine whether a violation has occurred and shall set forth its determination in a final order. If the Equal Employment Opportunity Commission determines that a violation has occurred, the final order shall also provide for appropriate relief.

(2) REFERRAL TO STATE AND LOCAL AUTHORITIES.—

(A) APPLICATION.—Section 706(d) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5(d)) shall apply with respect to any proceeding under this section.

(B) DEFINITION.—For purposes of the application described in subparagraph (A), the term "any charge filed by a member of the Commission alleging an unlawful employment practice" means a complaint filed under this section.

(c) JUDICIAL REVIEW.—Any party aggrieved by a final order under subsection (b) may obtain a review of such order under chapter 158 of title 28, United States Code. For the purpose of this review, the Equal Employment Opportunity Commission shall be an "agency" as that term is used in chapter 158 of title 28, United States Code.

(d) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final order under subsection (b) if it is determined that the order was—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(e) ATTORNEY'S FEES.—If the individual referred to in subsection (a) is the prevailing party in a proceeding under this subsection, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5(k)).

2 USC 1221.

### SEC. 322. SEVERABILITY.

Notwithstanding section 401 of this Act, if any provision of section 309 or 320(a)(3) is invalidated, both sections 309 and 320(a)(3) shall have no force and effect.

2 USC 1222.

### SEC. 323. PAYMENTS BY THE PRESIDENT OR A MEMBER OF THE SENATE.

The President or a Member of the Senate shall reimburse the appropriate Federal account for any payment made on his or her behalf out of such account for a violation committed under the provisions of this title by the President or Member of the Senate not later than 60 days after the payment is made.

P.L. 102–166
Sec. 402

**SEC. 324. REPORTS OF SENATE COMMITTEES.**

2 USC 1223.

(a) Each report accompanying a bill or joint resolution of a public character reported by any committee of the Senate (except the Committee on Appropriations and the Committee on the Budget) shall contain a listing of the provisions of the bill or joint resolution that apply to Congress and an evaluation of the impact of such provisions on Congress.

(b) The provisions of this section are enacted by the Senate as an exercise of the rulemaking power of the Senate, with full recognition of the right of the Senate to change its rules, in the same manner, and to the same extent, as in the case of any other rule of the Senate.

**SEC. 325. INTERVENTION AND EXPEDITED REVIEW OF CERTAIN APPEALS.**

2 USC 1224.

(a) INTERVENTION.—Because of the constitutional issues that may be raised by section 309 and section 320, any Member of the Senate may intervene as a matter of right in any proceeding under section 309 for the sole purpose of determining the constitutionality of such section.

(b) THRESHOLD MATTER.—In any proceeding under section 309 or section 320, the United States Court of Appeals for the Federal Circuit shall determine any issue presented concerning the constitutionality of such section as a threshold matter.

(c) APPEAL.—

(1) IN GENERAL.—An appeal may by taken directly to the Supreme Court of the United States from any interlocutory or final judgment, decree, or order issued by the United States Court of Appeals for the Federal Circuit ruling upon the constitutionality of section 309 or 320.

(2) JURISDICTION.—The Supreme Court shall, if it has not previously ruled on the question, accept jurisdiction over the appeal referred to in paragraph (1), advance the appeal on the docket and expedite the appeal to the greatest extent possible.

# TITLE IV—GENERAL PROVISIONS

**SEC. 401. SEVERABILITY.**

42 USC 1981
note.

If any provision of this Act, or an amendment made by this Act, or the application of such provision to any person or circumstances is held to be invalid, the remainder of this Act and the amendments made by this Act, and the application of such provision to other persons and circumstances, shall not be affected.

**SEC. 402. EFFECTIVE DATE.**

42 USC 1981
note.

(a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

# TITLE V—CIVIL WAR SITES ADVISORY COMMISSION

**SEC. 501. CIVIL WAR SITES ADVISORY COMMISSION.**

16 USC 1a–5
note.

Section 1205 of Public Law 101–628 is amended in subsection (a) by—

(1) striking "Three" in paragraph (4) and inserting "Four" in lieu thereof; and

(2) striking "Three" in paragraph (5) and inserting "Four" in lieu thereof.

Approved November 21, 1991.

---

## PUBLIC L⌁

### UNITED ST⌁
### RE⌁

An Act to extend the U⌁

*Be it enacted b⌁
United States of A⌁*

**SECTION 1. SHORT ⌁**

This Act may b⌁
Rights Reauthori⌁

**SEC. 2. ANNUAL RE⌁**

Section 5 of th⌁
1983 (42 U.S.C. 1⌁
"The Commissio⌁
section, submit ⌁
civil rights enfor⌁
to the President.⌁

**SEC. 3. REAUTHOR⌁**

Section 7 of th⌁
1983 (42 U.S.C. 1⌁

**"SEC. 7. AUTHORI⌁**

"There are a⌁
$7,159,000 for fi⌁
year 1992 to rel⌁

**SEC. 4. TERMINAT⌁**

Section 8 of t⌁
1983 (42 U.S.C. ⌁
"1994".

**SEC. 5. COMMISSI⌁**

Section 2(c), ⌁
of the United ⌁
U.S.C. 1975(c), ⌁
striking "Chai⌁
"Chairperson".

Approved N⌁

---

LEGISLATIVE HISTORY—S. 1745:

CONGRESSIONAL RECORD, Vol. 137 (1991):
    Oct. 25, 29, 30, considered and passed Senate.
    Nov. 7, considered and passed House.

LEGISLATIVE H⌁

CONGRESSIONA⌁
    Sept. 30, co⌁
    Oct. 28, cor⌁
    Nov. 5, 6, ⌁

# CIVIL COVER SHEET

#7-2248
PLF

**I (a) PLAINTIFFS**  James H. Pickett, Jr. & "Class"
5302 Broadwater Court
Temple Hills, Maryland  20748

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)   88888
Prince George's County

**DEFENDANTS**  John E. Potter, Postmaster General
United States Postal Service
475 L'Enfant Plaza, S. W. - Washington, D. C.  20260

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
~~PRO SE - Attorney To Be Named At Later Date~~
301/ 466-8993

Case: 1:07-cv-02248
Assigned To : Friedman, Paul L.
Assign. Date : 12/14/2007
Description: Employ. Discrim.

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☐ 3 Federal Question
   (U.S. Government Not a Party)

☒ 2 U.S. Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one in a corresponding Nature of Suit**)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
   Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ☐ G. *Habeas Corpus/* *2255* | ☐ H. *Employment* *Discrimination* | ☐ I. *FOIA/PRIVACY* *ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)  *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act)  *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA* *(non-employment)* | ☐ L. *Other Civil Rights* *(non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

*42USC 2000*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
This matter is being filed under "THE CIVIL RIGHTS ACT OF 1991", due to Discrimination & reprisal etc..(retaliation)     ($50,000,000.) Dollars

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☒   **DEMAND $** Fifty Million U. S.   Check YES only if demanded in complaint **JURY DEMAND** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   "Please see attatched three pages - Emailed from Trenton, New Jersey - 12-01-06   ☒ YES   ☐ NO   If yes, please complete related case form.

**DATE** December 13, 2007   **SIGNATURE OF ATTORNEY OF RECORD** *[signature]* (James H. Pickett, Jr.-ProSe)

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd