UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES H. PICKETT,            )
                             )
            Plaintiff,       )
                             )
    v.                       )
                             )   Civil Action No. 07-2248 (PLF)
JOHN E. POTTER, Postmaster General )   ECF
United States Postal Service, )
                             )
            Defendant.       )
_____)

PLAINTIFF'S MEMORANDUM TO THE COURT IN RESPONSE TO RECENT SUPREME COURT RULING

Comes now the Plaintiff, James H. Pickett, Jr., Pro Se, before the Court and Most Honorable Judge Paul L. Friedman and respectfully states as follows:

   1. On or about June 6, 2008, The Supreme Court ruled that "Civil War Era Law Protects Workers Against Retaliation In Bias Cases". According to a recent Jet Magazine article on page sixteen and dated June 16, 2008, quote, "Federal civil rights laws protect employees from discrimination as well as fellow workers who face retaliation for complaining on their behalf, the Supreme Court has ruled.
The High Court said in a 7-2 ruling that retaliation is another form of illegal discrimination barred by the Civil Rights Act of 1866 enacted following the Civil War. It protected newly freed slaves from discrimination.
The recent case involves a Black associate manager at a Cracker Barrel restaurant in Illinois. Hedrick Humphries filed suit claiming he was fired after he complained about race bias by other Cracker Barrel supervisors.
The idea that a provision of the Civil Rights Act of 1866, known as section 1981, "encompasses retaliation claims is indeed well-embedded in the law," Justice Stephen Breyer wrote in the majority opinion.
The Chicago-based 7th U. S. Court Of Appeals ruled Humphries could pursue his retaliation claim under section 1981 and the Supreme Court upheld its ruling on appeal."Unquote.

2. The Plaintiff, James H. Pickett, Jr., presently is before the Court with cases, Civil Action Number 07-2248 (PLF) and Civil Action Number 1:07-cv-01431 (PLF), both Cases are versus John E. Potter, Postmaster General United States Postal Service and both cases have resulted in the plaintiff being retaliated against by U. S. Postal Service Management each and every day, the Plaintiff is on duty.

3. The Plaintiff, James H. Pickett, Jr., wants to again make the Honorable Court And Most Honorable Judge Paul L. Friedman aware that the United States Postal Service is in violation of numerous Laws when it comes to "Veteran's" rights, etc.. As an example of what I am experiencing on a daily basis while on duty at the Curseen / Morris Mail facility located at 900 Brentwood Road, N. E., please see previous Plaintiff's memorandum to the Court. Also please note that on Friday, May 30, 2008 (Thursday night, my tour of duty is from 5:30 P. M. thru 2:00 A. M.) at about 12:40 A. M., Tour One Supervisor Cypress came to my flat case numbered 169 thru 296, and asked me if Supervisor H. Lewis had told me about going to "Automation DBCS # 41". I said no, and then Supervisor Cypress told me that I was needed on DBCS # 41. I then attempted to explain to Supervisor Cypress that moving me from my bid assignment to a less preferred assignment constituted a demotion and in doing so, violated my rights under veteran's laws as well as article 3, and 19 of the "Contract", etc.. For the record, I then went to the Automation section that I had bidded from since October 27, 2007, as instructed. I was also sent the following night again by Tour One Supervisor Cypress to the Automation DBCS # 41. ( I am presently preparing a complaint to the Office Of Special Counsel and/ Or the Merits System Protection Board.) The Plaintiff would also like to make the Court aware that since reporting to my new bid as referenced above on October 27, 2007, I have yet to work the entire section as have the other employees.

I have been demoted to a "Flats" only Clerk and has been denied almost 99% of the time any acess to the "Letter" section of my bid assignment, etc..
Again, this is in violation of my rights as a "Veteran". For the record, there is case law that supports my claims that I have been illegally demoted, etc..
It is my understanding that in my invoking my "Veteran's Rights" which cannot be over ruled by contract and/or any agreements other than the Congess, etc..,"I SHALL NOT BE MOVED" from my bid assignment, etc..

4. Plaintiff would also like to inform the Court and/or Most Honorable Judge Paul L. Friedman that with reference to the case number 07-2248 (PLF), On or about May 5, 2008, Trenton New Jersey President or Local President, informed me that the 3rd Circuit Court Of Appeals, case Number 04-1628 ruled in favor of paying the Arbitrated Case Numbered A00C4AC02141207. I was also informed that the U. S. Postal Service fired the Arbitrator for ruling in favor of the Trenton New Jersey Postal Workers, etc... For the record Mr. Bill Lewis can be reached at (609) 631-7746.

5. Plaintiff, prays that this Honorable Judge and/or Honrable Court will note for the record that the very fact that the U. S. Postal Service has paid Employees and made them whole in the past, that a presedent has been set, etc...
I affirm under the penalty of perjury that the fore going is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

*James H. Pickett, Jr.* June 16, 2008
James H. Pickett, Jr. -Pro Se
(Please note new phone number)
(301) 351-9232

5302 Broadwater Court

Temple Hills, Maryland  20748

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2008, I mailed postage prepaid to the following person a copy of this "Plaintiff's Memorandum To The Court In Response To Recent Supreme Court Ruling":

Mercedeh Momeni
Assistant United States Attorney
555 Fourth Street, N. W.
Washington, D. C. 20530

Jeffrey A. Taylor
United States Attorney
555 Fourth Street, N. W.
Washington, D. C. 20530

Rudolph Contreras
Assistant United States Attorney
555 Fourth Street, N. W.
Washington, D. C. 20530

Willaim B. Neel, Esq.
United States Postal Service
Capital Metro Law Office
Landover, Maryland 20783-2244

Respectfully Submitted,

James H. Pickett, Jr. - Pro Se
5302 Broadwater Court
Temple Hills, Maryland 20748
(301) 351-9232

# Supreme Court Rules Civil War Era Law Protects Workers Against Retaliation In Bias Cases

Federal civil rights laws protect employees from discrimination as well as fellow workers who face retaliation for complaining on their behalf, the Supreme Court has ruled.

The high court said in a 7-2 ruling that retaliation is another form of illegal discrimination barred by the Civil Rights Act of 1866 enacted following the Civil War. It protected newly freed slaves from discrimination.

The recent case involves a Black associate manager at a Cracker Barrel restaurant in Illinois. Hedrick Humphries filed suit claiming he was fired after he complained about race bias by other Cracker Barrel supervisors.

The idea that a provision of the Civil Rights Act of 1866, known as section 1981, "encompasses retaliation claims is indeed well-embedded in the law," Justice Stephen Breyer wrote in the majority opinion.

The Chicago-based 7th U.S. Court of Appeals ruled Humphries could pursue his retaliation claim under section 1981 and the Supreme Court upheld its ruling on appeal. ❏



16

# Supreme Court Rules Civil War Era Law Protects Workers Against Retaliation In Bias Cases

Federal civil rights laws protect employees from discrimination as well as fellow workers who face retaliation for complaining on their behalf, the Supreme Court has ruled.

The high court said in a 7-2 ruling that retaliation is another form of illegal discrimination barred by the Civil Rights Act of 1866 enacted following the Civil War. It protected newly freed slaves from discrimination.

The recent case involves a Black associate manager at a Cracker Barrel restaurant in Illinois. Hedrick Humphries filed suit claiming he was fired after he complained about race bias by other Cracker Barrel supervisors.

The idea that a provision of the Civil Rights Act of 1866, known as section 1981, "encompasses retaliation claims is indeed well-embedded in the law," Justice Stephen Breyer wrote in the majority opinion.

The Chicago-based 7th U.S. Court of Appeals ruled Humphries could pursue his retaliation claim under section 1981 and the Supreme Court upheld its ruling on appeal. ☐

# Calif. Congresswoman Calls Home Sale Improper

California Rep. Laura Richardson says that her Sacramento home was sold into foreclosure without her knowledge and contrary to an agreement with her lender.

She says she is like other Americans suffering in the mortgage crisis and wants to testify to Congress about her experience as lawmakers craft a foreclosure-prevention bill.

The congresswoman is speaking out after negative publicity over reports she defaulted on her mortgage, allowing the house to be sold at auction.

Richardson, 46, who won her seat in a special election last August, acknowl-



*Laura Richardson*

edged turmoil in her life in the months after incumbent Rep. Juanita Millender-McDonald's death in April opened up her Los Angeles-area House seat.

Richardson used her money to finance her campaign and fell behind in mortgage payments. She says she has renegotiated her loan and promised to pay it off, along with $9,000 in delinquent property taxes.

She insists she's not getting special terms as a congresswoman. "I had to figure out just like every other American how I could restructure the obligations that I had with the income I had," she says.

*–Associated Press*

| NATIONAL REPORT |
|---|

## Supreme Court Rules Civil War Era Law Protects Workers Against Retaliation In Bias Cases

Federal civil rights laws protect employees from discrimination as well as fellow workers who face retaliation for complaining on their behalf, the Supreme Court has ruled.

The high court said in a 7-2 ruling that retaliation is another form of illegal discrimination barred by the Civil Rights Act of 1866 enacted following the Civil War. It protected newly freed slaves from discrimination.

The recent case involves a Black associate manager at a Cracker Barrel restaurant in Illinois. Hedrick Humphries filed suit claiming he was fired after he complained about race bias by other Cracker Barrel supervisors.

The idea that a provision of the Civil Rights Act of 1866, known as section 1981, "encompasses retaliation claims is indeed well-embedded in the law," Justice Stephen Breyer wrote in the majority opinion.

The Chicago-based 7th U.S. Court of Appeals ruled Humphries could pursue his retaliation claim under section 1981 and the Supreme Court upheld its ruling on appeal. ☐

## Calif. Congresswoman Calls Home Sale Improper

California Rep. Laura Richardson says that her Sacramento home was sold into foreclosure without her knowledge and contrary to an agreement with her lender.

She says she is like other Americans suffering in the mortgage crisis and wants to testify to Congress about her experience as lawmakers craft a foreclosure-prevention bill.

The congresswoman is speaking out after negative publicity over reports she defaulted on her mortgage, allowing the house to be sold at auction.

Richardson, 46, who won her seat in a special election last August, acknowl-


*Laura Richardson*

edged turmoil in her life in the months after incumbent Rep. Juanita Millender-McDonald's death in April opened up her Los Angeles-area House seat.

Richardson used her money to finance her campaign and fell behind in mortgage payments. She says she has renegotiated her loan and promised to pay it off, along with $9,000 in delinquent property taxes.

She insists she's not getting special terms as a congresswoman. "I had to figure out just like every other American how I could restructure the obligations that I had with the income I had," she says.
—*Associated Press*

# COLLECTIVE BARGAINING AGREEMENT

Between
**American Postal Workers Union, AFL-CIO**

And
**U.S. Postal Service**

November 21, 2006
November 20, 2010



Article 2.3

# ARTICLE 2
# NON-DISCRIMINATION AND CIVIL RIGHTS

### Section 1. Statement of Principle

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status.

In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act.

(See Memo, page 281)

### Section 2. Committees

There are established at the national and APWU Regional/ USPS Area levels Joint Committees on Human Rights. The committees will be composed of responsible representatives of the Union and responsible management officials. The committees may develop affirmative action proposals on all matters affecting minority groups. The committees will also be advised of the plan for site selection for facilities planned for national postal mail networks and major metropolitan areas, and review availability of adequate housing and public transportation. The committees shall meet as required at mutually agreeable times.

### Section 3. Grievances

Grievances arising under this Article may be filed at Step 2 of the grievance procedure within fourteen (14) days of when the employee or the Union has first learned or may reasonably have been expected to have learned of the alleged discrimination, unless filed directly at the national level, in which case the provisions of this Agreement for initiating grievances at that level shall apply.

(The preceding Article, Article 2, shall apply to Transitional Employees)

## ARTICLE 3
## MANAGEMENT RIGHTS

The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:

A. To direct employees of the Employer in the performance of official duties;

B. To hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees;

C. To maintain the efficiency of the operations entrusted to it;

D. To determine the methods, means, and personnel by which such operations are to be conducted;

E. To prescribe a uniform dress to be worn by designated employees; and

F. To take whatever actions may be necessary to carry out its mission in emergency situations, i.e., an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature.

(The preceding Article, Article 3, shall apply to Transitional Employees)

6

## ARTICLE 19
## HANDBOOKS AND MANUALS

Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable. This includes, but is not limited to, the Postal Service Manual and the F-21, Timekeeper's Instructions.

Notice of such proposed changes that directly relate to wages, hours, or working conditions will be furnished to the Union at the national level at least sixty (60) days prior to issuance. The Employer shall furnish the Union with the following information about each proposed change: a narrative explanation of the purpose and impact on employees and any documentation concerning the proposed change from the manager(s) who requested the change addressing its purpose and effect. Proposed changes will be furnished to the Union by hard copy or, if available, by electronic file. At the request of the Union, the parties shall meet concerning such changes. If the Union requests a meeting concerning proposed changes, the meeting will be attended by manager(s) who are knowledgeable about the purpose of the proposed change and its impact on employees. If the Union, after the meeting, believes the proposed changes violate the National Agreement (including this Article), it may then submit the issue to arbitration in accordance with the arbitration procedure within ninety (90) days after receipt of the notice of proposed change. Within fifteen (15) days after the issue has been submitted to arbitration, each party shall provide the other with a statement in writing of its understanding of the precise issues involved, and the facts giving rise to such issues. Copies of those parts of all new handbooks, manuals and regulations that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall be furnished to the Union upon issuance.

Article 19 shall apply in that those parts of all handbooks, manuals and published regulations of the Postal Service, which directly relate to wages, hours or working conditions shall apply to transitional employees only to the extent consistent with other rights and characteristics of transitional employees negotiated in this Agreement and otherwise as they apply to the supplemental work force. The Employer shall have the right to make changes to handbooks, manuals and published regulations as they relate to transitional employees pursuant to the same standards and procedures found in Article 19 of this Agreement.